On the panel has before it a total of 8 appeals, pardon me, 7 appeals. Three of them are being submitted today on the briefs of that oral argument, namely Appeal 3284, Bonsolet v. Office of Personnel Management, Appeal 5154, Baird v. United States, and Appeal 3151, Jackson v. Merit System Protection Board. On the argument list, three appeals are being argued as one. Those are Brady Construction v. Various Defendants and Appeals 1460, 1469, 1057, and possibly an additional number not reflected in our calendar. Mr. Trojan, we'll hear first from you. Thank you, Your Honor. To please the Court, my name is Joseph Trojan. I'm the counsel for the appellant. The issue before the Court is when one amends a claim during a reissue... Counsel, does the reissue patent cover subject matter that would not infringe the original claims? That is correct. Isn't, therefore, the reissue patent broader than the original claims? No, it's not. The reissue patent extends beyond the scope of the original claim, covering something different than what was contained in there. How is it not broader? Because a claim can be different and yet not broader than the original claim. Haven't we said repeatedly that if a claim is broader in any respect, it is considered broader for purposes of analysis under reissue statute? In each one of those cases, there was a claim limitation that was critical to the patent that was deleted. This is a case of first impression. The Court has never been presented with a situation where all of the claim limitations in the original claim remain, none were deleted, and a limitation was actually added. You modified the claim to have the hole be made by tapping. The claim previously had not extended to cover a hole that was made by tapping, only pre-drilled holes. The claim is now broader. I'm really struggling to appreciate how you're standing here telling me that a claim covers matter wasn't originally claimed, and therefore is not broader somehow. Well, because there's different ways of assembling the header. And if one way is through self-tapping screws, the Court is describing, another way is to pre-drill it. Those two things are different. The new claim does not cover... You added an amendment, right? You added a limitation. That's correct. The attachment means was not there before, right? No, there was an attachment means. It was just a question of how the attachment means got there. So the limitation of an attachment means was not deleted. It is in both claims. This is an additional limitation to describe how that attachment means is secured. How do we know from the reissue record that the Patent Office was aware of these precise issues and made a judgment, which again, we have some obligation to uphold, that this reissue patent should issue? Because we provided the Patent Office with this Court's previous decision in which it interpreted the claim. We also provided it with the interpretation by the magistrate judge in the Steeler case. And not only did we provide those opinions, in Mr. Brady's declaration, he described the import of those decisions, that that meant these decisions had the effect of excluding the preferred embodiment from the claim. If I uphold your argument, the thing that troubles me is I end up, in effect, overruling the claim interpretation of another panel. Now, there's good reason maybe to do that. They overlooked an embodiment that was in the patent itself, and our fundamental principle of claim interpretation is that you construe the claim to cover all embodiments. But how do I deal with this, that in effect, I'm going to be overruling another panel? I don't think it's overruling the other panel, because the other panel was dealing with the original patent. And so therefore, you then have to look at the Patent Office. Yes, we can deal with the technicality that this is a reissue patent. It's a different patent, in effect. But in terms of the subject matter coverage, something that the other panel said is not covered is now going to be covered. In effect, I'm overruling their claim interpretation. Then we have to look at how the system is set up. We have the federal courts to interpret and this court to interpret the claims. But there's nothing in the reissue statute that says once a case has gone through litigation, it's gone up on appeal, it's been interpreted, that you're not allowed to apply for a reissue patent. And that's what we did. So the Patent Office, even after the earlier panel ruled on the interpretation, the Patent Office still has a statutory role to play. And so the Patent Office goes back and looks at that and says, okay, this is now part of the file history. The Federal Circuit's earlier decision becomes a part of the history of the original patent. They then go and interpret whether Mr. Brady was entitled to this new claim that was being presented in that complete context. So it's not overruling the earlier panel. It's just as if frequently where it comes up more often is in reexaminations. But Judge Rader's question isn't expressing a worry that the Patent Office is overruling the panel. The concern is that this panel, before whom you're arguing, ought not to overrule a prior panel because of the cardinal rule that a later panel cannot overrule a prior panel. Well, this court isn't directly overruling the earlier panel. It is upholding an interpretation of a new patent by the Patent Office. So that's the action. That's why Judge Rader said in effect. But now we're just playing semantic games. Either we're directly overruling them or indirectly or in effect. The point is that we normally are required to follow what prior panels have ruled. Correct, but the Claim 11 was not before the earlier panel. Here's maybe the way to put that question directly. What are you going to say to us in six months? If we affirm your position today, in six months there will be an infringement case back here. You will be saying they infringe your new patent. And they'll be saying we just follow the claim interpretation of the Federal Circuit in the earlier case. What will you say then? My answer to that is simple. That's Claim 1 of the patent, which still exists. I now have reissued Claim 11. I'm now accusing them of infringing Claim 11. I will never accuse them of infringing Claim 1 because this court has interpreted Claim 1 in a manner that would not permit me to accuse them of infringement. So there's not an inconsistency there at all. Counsel, your clients made public announcements after it received its reissued patent. This new patent removes the limitation recently imposed by the Court of Appeals. I'm just struggling with how you can stand here and argue that this patent is not broader. Your own companies, your own clients' public announcements were raving about how successful they were in securing from the Patent Office a broader patent. And yet today you stand before me and try and make what I see to be a nonsense argument that it's not broader. Well, trying to explain something to the public, especially in the construction industry where the educational level is not that sophisticated, is different from trying to explain it in an infringement case. So to go and explain to people, if we were to go and try to explain in a letter, okay, there's different scopes to patents. Some claim scopes can be different without being broader. That would have been lost. What we were saying was... Do you believe you removed a limitation imposed by the Federal Circuit? No, I added a limitation. No. The Federal Circuit had construed your claim as not covering tapped holes, only limited to pre-drilled. I did not remove any limitation from Claim 1. Do you believe the current claim, the reissue claim, covers exactly what the Federal Circuit said the previous claim did not? Yes, it does. So the new claim covers tapped holes. The previous claim was held not to cover tapped holes. How is it not broader in that it now covers tapped holes when it previously did not? Because it covered other... Under the Federal Circuit's interpretation of the claim, it covered other things. It covered the non-preferred embodiment. I have now covered something different but not necessarily broader. I have now covered the preferred embodiment. But that doesn't make it broader in the sense where I'm covering both embodiments or I'm making it broader in the sense that I'm covering... Let me read a quote to you. A claim that is broader in any respect is considered to be broader than the original claims, even though it may be narrower in other respects. I'm sure you're familiar with this quote. It's often repeated in our precedent. That's true. And in those contexts, it's always because somebody removed a limitation in the original claim, not added a limitation. And in those other cases, I am not aware of any of those cases where the Patent Office expressly said, this claim is narrower. This claim adds a material limitation to make it narrower. And so when you look at a situation where you literally can go back and forth on the interpretation in your mind, the PTO's interpretation should be controlling. Why? Because the district judge who's ruled on comparing the scope of the original claims versus the reissued claims, that's the decision before us. The Patent Office decision isn't conclusive on the district court or us. But a reissued patent still carries the weight of having to be proven invalid by clear and convincing evidence. So when you look to the Patent Office determination and they go and say, well, this is a narrowing claim, that is given deference. It's not as though they ignored prior art or they ignored that. Why do we care at all what the Patent Office said? All that does is change the burden of proof. The trial judge who's ruling we're looking at has held that it was a broadening amendment and, therefore, it's invalid. Correct. Why is there any issue of deference to the PTO? The PTO is not who's being reviewed here. The district court is being reviewed here. Because the district court is the court that has the obligation to give the PTO deference. All that means is that the burden of proof is on the challenger. The trial judge held that the burden of proof was carried by the challenger. We have to say, was that right or was that wrong? It has nothing to do with what the PTO thought back then. Actually, it has a lot to do with what the PTO thought. Because if the court is struggling with two interpretations of whether something's broadened or not broadened, whether they agree with the Patent Office or not, and there's no clear and convincing evidence one way or the other because there wasn't anything withheld from the Patent Office that the district court was looking at, the district court had everything that they needed. The Patent Office had everything the district court had. So it's not the role of the district court to simply overrule a judgment of the Patent Office when there's nothing new being considered. That's our contention there. What's your authority for saying a district judge can't overrule the Patent Office? Well, it can. It certainly can. But it has to meet the standard of clear and convincing evidence. There are no facts in dispute here. All that's in dispute is claim construction, and the scope of original claims compared to the scope of reissued claims. That's exactly our point. There are no facts in dispute. The Patent Office had everything. But then clear and convincing burden is not in play in this case. We would contend it very much is because that means that if the PTO and the district court had the identical set of facts before it and the PTO, with its considered judgment in these matters, has concluded that there's a narrowing claim, it's not for the district court to go and say, no, I find by clear and convincing evidence that that's wrong. There was no new evidence. Of course it is for the district court to do that. That's exactly what the purpose of the district court is, is to look at what occurred and, under the correct evidentiary standard, determine the correctness of it. In this case, the district court looked and said, this is a broadening amendment. It's clear and convincing. What happens if Claim 11 and Claim 1 had both been in the original patent and this court had construed Claim 1 in the way that it did? Would that affect your Claim 11? No, because Claim 11 expressly overcomes the problem of indefiniteness because it specifically describes how the whole was made and that was the question that the patent examiner had. So if it had been in the original patent, it would not have been subject to the interpretation given to Claim 1 because the claim interpretation was based upon statements made concerning the indefiniteness rejection. Do you want to reserve the rest of your rebuttal time? I want to just briefly... I understand that I've run over on that. I want to, just for five seconds... I fully appreciate the court's concern about the definition of what's broadening and that if it infringes something that previously existed, there's a problem. We go and say that you need to look at Section 251 and 252 and how they act together. It's a statutory area of the law. Patent law is statutory. There's nothing in the rule, that blanket rule, that's found in the statute. And the remedy for... ...shall be granted enlarging the scope of the claims of the original patent unless applied for within two years. It seems that the statute is right on point. But it doesn't say that define that as infringement. The courts have interpreted it that way. I don't know what you're talking about defining something as infringement. The court says no reissued patent shall be granted enlarging the scope of the claims and this court has said repeatedly that if it broadens in any respect, even if it narrows in others, it is broader. I'll reserve the balance of my time. Well, what's your answer to the question? The answer to the question... Are you saying this panel has authority to overrule the panel whose language Judge Moore just read? No, I'm saying that this is a case of first impression. Every one of those cases that have put forth that guideline has been where there's been a deletion, a material deletion of limitation. How does that help you? It's a question of how you measure scope. That would seem to apply in every future case. It is a way to measure scope, but there's nothing in the statute that says it should be measured by infringement. But the case law says it is measured by infringement and how are we free to overturn that prior case law? May I answer? We're saying that you're not overturning it. This is a case of first impression where there was an additional limitation added. It's a material limitation that restricts the way the track is assembled. It clearly limits that claim more severely than it was before. We're saying that that particular case hasn't been before this court before. It was always and we cited every one of those fact patterns in every one of those earlier cases showing that there were deletions of material limitations that the court was addressing and it made sense in that context. It doesn't make sense here, so that's why we went back to look at the statute. Where did this infringement analysis come from? It's not in the statute. The remedy is actually in 252. It's an equitable remedy and we're saying that you always have to go back to the statutory language when you're looking at something as a first impression. All right, Mr. Bocchieri. Thank you, Your Honor. Good morning. May it please the court. We have divided our time up, so I will be brief and of course entertain any questions. Are you going to be addressing the attorney's fees issue? I won't be arguing that, Your Honor, but we are joining in that notion. Is someone else arguing? Who's arguing attorney's fees? That's what I was going to start with, but that's okay. Go ahead. You please go ahead. Yes. Okay, thank you, Your Honor. First of all, I just want to begin with we are joining in the attorney's fees issue. The court is absolutely correct on the interpretation of the broadening of the claims. The claims were unquestionably broadened. You don't know what this court has decided on that issue. The question I have comes down to the prosecution history that was used to narrow the first patent. Yes, Your Honor. If you look at that, it says clearly this amendment should overcome the examiner's 112 rejection based on indefinites with respect to claim one. Yes. We're clearly talking only about claim one. That is true. Therefore, the only claim interpretation this court is bound to uphold is claim one. This is claim 11. Yes, and I did not mean to prejudge Your Honor's opinion. I meant the statement of the rules. Yes, but you have to deal with the distinction between claim one and the claim 11. Right. Claim 11 incorporated a product that would not infringe under claim one. They went through two opinions. So the federal circuit said claim one is limited. Now, there was a larger patent at stake in that case, wasn't there, that had more than just claim one in it? Yes, they had claims one through. And that larger patent had specific language in the specification, which covered two embodiments. That's correct. So why wouldn't this court agree with the patent office that the patent itself continued to cover more than one embodiment? Because the two prior opinions, the limited claims one through 10, to having a pre-drilled hole. And claim 11, the court brought this. The prior opinion dealt with claim one. That was what was asserted. That was what the prosecution history limited. And that seems to be the scope of what this court has decided before. And the patent office would then be fully within its rights to read the patent and say, there's nothing broadening the scope here, because it says right in here it covers two embodiments. In fact, the federal circuit law requires us to interpret patents to cover embodiments that are disclosed right within the patent. So the patent office has got it right. And the trouble is that theoretically, the district court has interpreted this court's judgment with respect to claim one to cover the entire patent, which covered more than the limitations put on claim one. The prior opinions included claims one through 10, Your Honor, respectfully, not just claim one. So all of the claims. But the prosecution history only affected claim one. And so with what the court placed its limitation on, claim one. That's all this prosecution history could affect. That's what it says right in it with respect to claim one. It was fully argued. And it was appealed for certiorari. The public has a right to rely on that interpretation. And then they did exactly that. Well, they have a right to rely on the patent document, too, which has in it two embodiments. Which was interpreted by two courts, Your Honor, and was limited to the pre-drilled holdings. Based on something which is only claim one. No, it's claim one. I would respectfully disagree, Your Honor, and say it's claims one through 10. That's what the opinion incorporates, and that's what the public relied upon. And it's admitted by the plaintiff that the new product does not infringe. Excuse me, the new product would not infringe the original claims. And it's not just the slip track opinion. It's also. We've gone through a reissue now. And you're trying. So something has changed the whole game here. And you're still trying to enforce with me this prosecution history that was limited to claim one. No, we're trying to enforce the simple rule of reissue. And this is identical to the In re Freeman case, Your Honor. Mr. Trojan represented to the court that there is no. Well, tell me how the reissue broadens the patent if the patent himself covers pre-drilled and un-pre-drilled embodiments. The patent does not cover that according to the prior ruling, Your Honor, I would submit. I'm reading the patent. The patent says right in there. I can't ignore what the patent says. But they argued that before and lost. Well, they argued that based on prosecution history that dealt with claim one. So you have a little. No, they did argue claims one through 10, Your Honor. Now we're back to the prior ruling of this court. But this court had to deal with several rules. We're the only country in the world that interprets prosecution history to limit claims scope. But we all, every country in the world, agrees that every embodiment must be included within the scope of a claim. They also argue that in. Read that and say that's the rule. And that's what the patent office apparently did. They also argue that in the northern districts. They had two fights at the apple on this issue. They lost. The public has a right to rely on it. And I would direct the court. The public, we've been over this. The public has a right to rely on the patent, too. But they have a right to rely on the court's prior decision that the claims are limited to the one embodiment, Your Honor. So with that basis, they went back to the patent office, got another claim that admittedly incorporated products that did not previously infringe. That's a clear violation of their issue rule and is directly on point with the rule. Unless we read the patent, which gives us its scope, and then they didn't broaden at all, did they? Because it's right in there that there is an embodiment without a pre-drilled hole. And the only argument you can give me against that is, ah, but they surrendered it in prosecution. But the surrender is clearly linked to claim one. Well, first of all, the issue is, I would respectfully disagree with that. Because number one, there's two opinions at issue here. It's not just the Federal Circuit opinion. It's the Northern District opinion. Secondly, they waited for 12 years to get the reissue patent. They could have done it within a two-year window. Your Honor, I think, would require a reversal of the Federal Circuit's earlier opinion that it's not limited. That interpretation was argued full bore, and it was lost. So now we have to revisit that and say, well, the earlier opinion was really wrong. It should have included two embodiments. It didn't. That's a decision that was made. The plaintiff argued twice through years of litigation, seven years of litigation. And they lost on that. Now we're back in the district court. And the question is whether or not the second claim, claim 11, incorporates a product that did not earlier infringe. And as to that, there's no ambiguity. Adding language, merely adding words doesn't mean that it's narrower. There's no question that it's not narrower. And I would submit, Your Honor, that the Inouye Freeman case is identical, materially identical, in all respects. You should not be able to do an end run around the court by going to the patent office and getting a broader claim. Counsel, time allocation was worked out among all the appellee counsel. And we've given you four minutes beyond your time. So maybe we'd better go on to the next speaker. Thank you, Your Honor. Thank you. May it please the court. My name is Ron Oines. I represent Perfect Wall and Metalite. And I would like to address the attorney's fees issue that we sought at the district court and also seek on appeal. On December 1, 2004, this court accepted the party's invitation in the prior case to construe the claims of the patent in the interest of bringing this litigation to a conclusion. That was nearly four years ago. This court unequivocally held. Counsel, how would you explain what the district court did when he narrowed, or she, I'm sorry, when she narrowed, or when, gosh, narrowed, when she denied your decision or your motion for attorney's fees? How would you explain the rationale or basis of her decision? I would have a hard time explaining it, because I don't believe there's enough findings there. Well, I don't have a hard time. She says, well, wait a minute. The patent office issued this knowing all of the information. And they did. They presented all of the information. Your inequitable conduct arguments I find a little difficult to swallow. They disclosed everything. Now, they argued zealously to the patent office that nonetheless the claim was narrow. And while the district court may or may not agree with that argument, she did not find them to have withheld any material information. But the one thing that did trouble me about her decision is it seemed to be based almost exclusively on the notion that the patent was held to be valid by the patent office, and therefore this isn't an exceptional case. And that just troubles me a little bit. What are your thoughts about that? Your Honor, on the inequitable conduct point, I believe there's sufficient evidence to support a finding of inequitable conduct. Yeah, but I'm not asking about the inequitable conduct point. So go right to what I'm talking about. OK, setting that aside, I believe there are other grounds to have awarded fees in this case. And the district court seemed to believe that a finding of inequitable conduct was a prerequisite to awarding fees under Section 285. And if you look at what the district court did say, she did just find that there was no inequitable conduct. No. She says the court finds Brady did not engage in vexed, unjustified, or otherwise bad faith litigation or file a frivolous suit, and therefore this case is not exceptional. In that portion of her opinion, she's not at all addressing inequitable conduct. Where's the bad faith? The bad faith, Your Honor, I believe is shown by the fact that, in my opinion, patent counsel knew exactly what he was doing here. Mr. Brady knew exactly what he was doing here. You just went through an argument that you listened to that shows that your whole case hangs by a narrow margin. And you're telling me there's bad faith because they bring that issue to the court? Your Honor, the only way that the Patent Office issues this reissue patent is if it completely ignores the Federal Circuit's prior interpretations. They had the Federal Circuit's opinion. You're saying the Patent Office committed the bad faith? No, no. What I'm saying is the patent he, the patent applicant, specifically represented over and over again to the Patent Office. And you're saying the Patent Office was so dumb that they would fall for anything? No, Your Honor, I'm not saying that. With all due respect to the Patent Office. We have a presumption that they act with a certain degree of regularity and competence, indeed expertise. So where's the bad faith? Well, I think the bad faith is also shown in the industry announcement, for instance. And the court has talked about that industry announcement. Again, this is a patentee who went through six years of litigation over this patent. You're really making a trial court argument here. We're not the fact finder. We're reviewing whether Judge Stotler's fact finding was clearly erroneous. You're not addressing that. You're in the wrong court. You're remaking a trial court argument to a court of appeals. Your Honor, I'm trying to address the district court's finding. We do believe that the district court's finding was clearly, was clear error. And I'd like to- Based on what? That given this evidence, the only reasonable conclusion a fact finder could come to is that there was bad faith and therefore she was required to find bad faith on this record? Yes, Your Honor. I believe that's the case on this record. That if we allow a patent owner to be told by the federal circuit that a patent is limited in a particular way, this court denies a rehearing en banc, the Supreme Court denies cert. This litigation should have been concluded- That covers precisely the new claim, new claim, reissued claim, something that's never been before this court before that exactly describes what's in their patent. That's the exact embodiment that this court held was disclaimed during the prosecution of the patent. Based on prosecution history that only covered claim one. A claim that's not before us now. We're not talking about that. We're talking about claim 11. Remember, your whole case is hanging a little bit precariously on whether the court makes a distinction between claim one and claim 11. And based on that, you're saying there's bad faith? Yes, Your Honor. In claim seven, which was the only other independent claim of the original patent and continues to be in the reissued patent, has the exact same language that the prosecution disclaimer applies to. So, in other words, I respectfully disagree that claim one was the only claim that was interpreted by the Federal Circuit in the prior opinion. All right. We've given you extra time again at the expense of subsequent speakers. I think we better turn to Mr. Barnard. Thank you, Your Honor. My name is Delbert Barnard speaking for Steeler Inc. When the patent was two years... Next time we're a tie. This is the Federal Circuit. Please proceed. When the patent issued, the claims that it covered one of two disclosed embodiments, the reissue application was filed 12 years after the issuance. We've heard all of this about four times. Don't repeat anything that's already been argued before. That's just wasting our time. Well, the point I was making is that there was an embodiment that was disclosed but not claimed in the original patent, which I argue was dedicated at the passage of that two-year period of time. And so it could not have come back and been recaptured for that reason. It was a disclosed, unclaimed, and dedicated embodiment. That's the point that I made, and I've addressed this in my brief. Anything else? Mr. Stewart. Good morning. Paul Stewart of Kenobi, Martins, Olson & Bear on behalf of California Expanded Metal Products. And I would like to focus just on the attorney's fees issue, if the court has no questions, on the validity issue. And we do not base- I'm confused. Did you ask for attorney's fees? I thought only two or four parties even asked for attorney's fees. We did ask for attorney's fees, both below and on appeal. We filed a Rule 11 motion as well as a 285 motion in the district court. And our claim for fees was not based on inequitable conduct. It was based solely on the decision to file suit, which we think was essentially a knowing assertion of an invalid patent. And I do want to address Judge Rader's point as to where is the bad faith. We think that the day this court issued its decision in the first round of these cases, when the court held that the patent, the original Brady patent, covered only the drilled hole embodiment and not the tapped screw embodiment. And then again, when in the Steeler case, the district court reached that same conclusion, and this court affirmed under Rule 36, that was race judicata against Brady. Brady knew for all time that Brady's patent covers only the drilled hole embodiment, not the tapped screw embodiment. Brady looked at his patent, or certainly should have looked at his patent, and saw it was 12 years old. So at that point, Brady knew not only does my original patent not cover the tapped screw embodiment, but I cannot get a reissue patent covering the tapped screw embodiment, because, as Judge Moore said, that is going to cover additional subject matter, because it's another embodiment. It's another product that's covering products that you didn't consider before. Bad faith is a state of mind. We have a fact finding by the district judge that there was not bad faith here, given the proofs in the case. Well, and respectfully, Your Honor, we suggest that that finding is clearly erroneous. There's two elements to the bad faith here that I see. There's the facts and the law. Did Brady know as a factual matter that his claim, his new patent, his reissue patent, covers additional subject matter? I think the answer there is undeniably yes. Mr. Brady represented to this court here this morning that he understood that his patent covered additional subject matter. We've heard about the press release where he indicated to the public it covered additional subject matter. We've all seen the prosecution history where he told the patent office that it covered additional subject matter. So he represented to the district court it covered additional subject matter, and we submitted letters that Brady wrote to us indicating, again, it covered additional subject matter. What are you asking us to do? Are you asking us to impose sanctions to act as a fact finder here and come to the opposite conclusion of the district judge? We're at the very least asking you to find that the district court's decision was clearly erroneous on the record. Well, what if we did? Then what are we supposed to do? I would say the court has discretion to either remand it to the district court with instructions to reevaluate the evidence in light of the legal standard, or the court has discretion to send it back. Is there some reason to think that the trial judge misunderstood the applicable legal standard? I do think so. I think there was a heavy focus on the inequitable conduct in the trial judge's opinion. Judge Moore recited a passage from the opinion that distinctly didn't rely on that. And in that passage, the chief judge Stadler said that she believed there was sufficient reason to believe that the case could have been brought in good faith. She didn't elaborate further on that, to my recollection. But is there some indication that you can see in her opinion that she misunderstood what the applicable legal standard is? In absence of that, what's the point of sending it back to her? Because she knows she has discretion. Even if I agreed with you that it was clearly erroneous, she's just going to exercise her discretion. You're not going to get the attorney's fees. You're going to cost your client more money. You're going to cost the court more time. You're going to cost them more money. What's the point? The second option would be to direct the district court that this is an exceptional case. But even if we direct it as an exceptional case, she has discretion. We can't exercise her discretion. We are not a trial court. Well, I think once the district court hears that this court believes this was an exceptional case, that would have a substantial influence on how she exercises her discretion. And why do we think it's exceptional? Where's the bad faith? It is exceptional because we know to a moral certainty, because we've had representations in this court in the briefs, in the district court briefs, all by Brady, that Brady understood from day one that this patent, the reissue patent, covered subject matter not covered by the original patent. We also have correspondence between us and Brady prior to litigation, presenting him with this court's precedents that said unequivocally that under Section 251, if you have a claim that covers subject matter that was not covered by the original patent. We've been over this, haven't we? Your case is hanging by a thread as it is. And you're saying for them to make the argument is bad faith? I'm not sure I understand what thread the case is hanging by, Your Honor. If we decide Claim 11 is different from Claim 1, you lose everything. They're going back and they're suing you for infringement. And we'll uphold it. That's a close case for you, isn't it? Your Honor, frankly, I'm not understanding. You are understanding perfectly well that this is a close case. And if it's a close case, she was correct to say there's no bad faith. Well, I would agree. Your first case was a close case. It was a two-to-one case with a senior judge voting in the majority. The first case may very well have been very close. And that's the landscape that we're in. And if it was based on prosecution history that only covers Claim 1 and those dependent on it, then the patent scope clearly delineated in its specification to cover both embodiments was not broadened by this reissue. This reissue is appropriate, and they can sue you on it. Now, where's the bad faith? Your Honor, my understanding of a broadening reissue is it's measured by the claims, not by the spec. Broadening reissues almost always are supported by the spec. We have a new claim. We have a new claim, and the new claim, by everybody's admission, covers subject matter that wasn't covered by the original patent. Everybody's? What about the Patent Office? Well, I'm speaking on behalf of... They're the Office of Expertise, and they don't seem to agree with you, sir. Well, the Patent Office does make mistakes. So the whole thing depends upon whether you convince me that the Patent Office of Expertise made a mistake. That sounds to me like it's a close case. And if it's a close case, there's no bad faith, is there? Your Honor, no, if it's a close case. But what we've got going on here is a product that fell outside the scope of the original patent. We've been over that. How can a patent owner rationally think that a patent obtained outside the two-year window, a reissue patent, is going to successfully, validly cover that exact same product? That's the reason for the two-year statute of repose is to let everybody know, we're done. Your patent didn't cover that product the first time around. If you don't get it within two years, it simply can't cover it. There's no way, shape, or form, no matter how you come up with a legal argument, what you want to do, it's done. You can't cover anything further. Time has expired. We've given you three extra minutes. Thank you, Your Honor. Mr. Trojan will hear from you. There is a difference between a broader claim and a different claim. Claim scope can be different without being broader. That was our basic contention when we sued on this patent. As the court's well aware, we disclosed everything. We were not about to go and hide anything from the patent. That's already been established. It's not contested, so you don't need to retread that. The only additional item that I wanted to address was the raised judicata issue. That argument was made at oral argument. There is absolutely no raised judicata with respect to the original case. Raised judicata has specific elements to it, and the judgment was with respect to claim one. There is absolutely nothing in the reissue statute that says once there's been a final determination of one claim that you cannot go back and file for a reissue patent, and that's exactly what we did. There has been no raised judicata with respect to claim 11. Counsel, can a district court ever find a case exceptional if the patent office issued the patent and then they find it invalid? Well, certainly if there was inequitable conduct. Well, apart from inequitable conduct, can an invalid patent, a patent that has been invalidated by the district court, is it simply insulated from attorney's fees and a patentee can assert it no matter how clearly it is invalid and be completely insulated and safe from attorney's fees simply because the patent office made a mistake in issuing it? And there was an inequitable conduct, but it was clearly invalid and the patent owner knew it was invalid at the time they sued. If the patent owner, well, I could imagine a situation where the prior art wasn't known at the time of the reissue. No, imagine it was all there and the patent office just found the prior art didn't disclose something, but in fact it did. But the issue was addressed by the patent office and argued before the patent office. Well, no, then that's perfectly fair. That's not grounds for... The patent office simply overlooked a disclosure and a reference, just overlooked it, but it's there. It's clear as day it's there. You can't find that... An opposing counsel writes a letter to the patentee pointing out to them that it's there. That can't ever be an exceptional case simply because the patent office issued the patent? Wouldn't that give patentees unfettered discretion to take bad patents, if there ever are any, even if they know that are bad, and drag defendants into court to have to force them to expend enormous amounts of attorney's fees litigating them? That additional limitation of if they know that they're invalid, if I know a patent to be invalid, I cannot sue on that. I'm not protected by the presumption. If I know it to be invalid, I cannot sue on it. That's a sanctionable offense. All right, time has expired. We'll take the several appeals under advisement. We thank all counsel. Thank you, Your Honors. Thank you.